# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **DEANN K. GROVE, on behalf of herself and all others similarly situated,** | ) ) ) | **Case No.:  6:16-cv-1460-PGB-TBS** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | |
| **CALIBER HOME LOANS, INC.** | ) ) | |
| **Defendant.** | ) ) | |

### DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Caliber Home Loans, Inc. ("Defendant" or "Caliber") moves the Court for dismissal of both counts of Plaintiff Deann K. Grove's Complaint for the reasons set forth in the Memorandum below.

## INTRODUCTION

At its core, this action is an effort to expand the Fair Debt Collections Practices Act ("FDCPA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") to establish claims despite the absence of actionable conduct.  Indeed, the gravamen of Plaintiff's Complaint is that she was damaged, not from "collection" efforts or deceptive practices, but because she voluntarily elected to make a monthly mortgage payment through a Western Union Speedpay option for a disclosed fee, in lieu of the plethora of other means by which Caliber accepts payments without fees, including, but not limited to, payment by US Mail, Federal Express/UPS, or bank transfer.  The Complaint does not allege that Plaintiff was deceived into utilizing the Speedpay option, that Plaintiff was unaware of the fee charged to use the Speedpay option, or that Plaintiff was prohibited from paying by other means.  Rather, Plaintiff asks this Court to

compensate her for an agreement she knowingly and voluntarily entered to obtain a convenience *for herself*.

As will be set forth below, Plaintiff's Complaint fails not only on the basis of controlling 11th Circuit authority, but on basic principles of law and individual freedom. In this Circuit, it is well established that a party may only recover under the FDCPA for "collection activity." There is no "collection activity" when a customer voluntarily elects to pay a fee in exchange for a convenience payment option (in lieu of other available no-fee options) because the fee is not added to the underlying debt, not demanded as due with the debt, and is voluntarily paid by the customer upfront. To the extent courts outside the 11th Circuit have allowed similar claims, their treatment of these claims does not overcome controlling 11th Circuit authority. This is particularly true when, as here, that treatment is poorly developed and substantively flawed. Indeed, if given effect, Plaintiff's interpretation of the FDCPA and FDUTPA provisions at issue converts them to unconstitutional restrictions on both Plaintiff's and Defendant's First Amendment right to contract. Finally, Plaintiff's Complaint fails because the fees at issue are specifically authorized by the Electronic Funds Transfer Act; Defendant is not a "debt collector;" and Defendant's actions do not violate the FDUTPA. Accordingly, Defendant requests that Plaintiff's Complaint be dismissed with prejudice.

## FACTUAL ALLEGATIONS

Plaintiff Deann Grove ("Grove" or "Plaintiff") entered into a residential mortgage loan secured by property in Florida and evidenced by a Note and Mortgage dated October 7, 2005. (*See* Compl. ¶ 5.) In March of 2016, Plaintiff entered into a Home Affordable Modification

Agreement, modifying the terms of the Note and Mortgage.[1]  Caliber services Grove's loan on behalf of the owner of the underlying obligation pursuant to the Note, Mortgage, and Modification.  *Id*. ¶ 7; Ellis Decl. ¶ 9.  Plaintiff's loan was in default when Caliber began servicing it, but was brought current by the Modification in March 2016.[2]

The Loan Documents do not require Caliber to make available pay-by-phone or online options and do not require Caliber to accept payments by phone or internet.  (*See* Ellis Decl., Exs. A-C.)  Like other Caliber customers, Plaintiff is free to make her payments by check delivered by mail or overnight delivery service and by recurring or one-time electronic fund transfer options, all of which are clearly spelled out in Caliber's monthly statements.  In addition, Caliber customers may pay by credit or debit card over the phone or online via the Speedpay service.  This option is the only payment method to which a fee applies and is the exclusive focus of Plaintiff's Complaint.  (*See* Compl. ¶¶ 11, 17 (alleging that Plaintiff "could have paid by other means"); Ellis Decl. ¶¶ 14-18, Exs. C, E.)

On April 6, 2016, after the Modification brought her loan current, Plaintiff opted to make a mortgage loan payment over the phone or online via the Speedpay service, agreeing to pay an associated $8.00 fee.  (*See generally*, Compl. ¶¶ 9-12; Ellis Decl. ¶¶ 18-20.)  Although she was

---

[1] True and correct copies of the Note, Mortgage, and Modification (the "Loan Documents") are Exhibits A, B, & C, respectfully, to the Declaration of Martha Ellis, Exhibit 1 hereto. Consideration of the Note, Mortgage, and Modification does not require conversion of this Rule 12 motion to one for summary judgment because the Complaint references the "mortgage contract" (Compl. ¶ 11), and the terms thereof are central to her claim.  *See*, *e.g.*, *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007); *Brady v. Postmaster Gen., U.S. Postal Serv.*, 521 F. App'x 914, 915-17 (11th Cir. 2013); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[2] Compl. ¶¶ 7-8.  *See also*, Monthly Mortgage Stmts. (Exs. C, E to Ellis Decl.).  Consideration of the monthly statements does not require conversion of this Rule 12 motion to one for summary judgment because the Complaint relies upon the default status of her mortgage loan and payment options provided for making payments on her mortgage loan (Compl. ¶¶ 8, 17), both of which are reflected in the statements, and both topics are central to the claim being brought by her.  *See*, *e.g.*, *Tellabs, Inc.*, 551 U.S. at 322; *Brady*, 521 F. App'x at 915-17; *Day*, 400 F.3d at 1276.

fully aware of the fee and had other payment options, Plaintiff alleges that her voluntary payment of this fee constitutes an unfair or deceptive practice because she contends that a portion of the fee she voluntarily agreed to pay was retained by Caliber or returned by Western Union to Caliber. (Compl. ¶ 15.)

Plaintiff's Complaint does not allege that Plaintiff received any communication from Caliber regarding Speedpay, does not identify how she learned of the Speedpay service or how she was informed of the fee charged for the service, and does not allege that she was tricked or otherwise deceived into using the service or paying the fee. *See generally,* Compl. Plaintiff ***does not and cannot*** allege that Caliber demanded that she pay any fee in order to make a payment, required or pushed her to pay via the Speedpay option, demanded such a fee as part of the underlying debt on her mortgage loan, added the fee to her loan balance, or communicated to her in any way that such a fee was due or owed as part her debt on the mortgage loan. *See generally, id.*; Ellis Decl. ¶¶ 14-18. Plaintiff alleges only that there is a .pdf document on Caliber's website that refers to a "Western Union Speedpay fee." *See id.* ¶ 16. Plaintiff's Complaint does not disclose when she saw this document or whether she was referred to the web address for the document by Caliber. *See generally*, Compl.

## RULE 12(b)(6) STANDARD

FRCP 12(b)(6) requires the dismissal of a complaint when it is clear that the Complaint does not state a viable claim for recovery. Although a complaint need not contain detailed factual allegations, a plaintiff must provide "grounds" for entitlement to relief, amounting to more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the plaintiff's

well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Caravello v. Am. Airlines, Inc.,* 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing *U. S. v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986)).   However, a court should not accept naked assertions devoid of factual allegation, legal conclusions or threadbare recitals of the elements of a claim supported by conclusory statements.

While motions to dismiss are often based solely on the pleadings, a court may consider records outside the four corners of the complaint if they are central to the plaintiff's claims and of undisputed authenticity.  *See Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005); *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).   Documents need not be physically attached to a complaint to be incorporated by reference into it.  *See Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005); *Harris v. Ivax Corp.*, 182 F. 3d 799, 802, n. 2 (11th Cir. 1999).

## ARGUMENT AND CITATION TO AUTHORITY

Plaintiff's Complaint asserts two claims based on the fact that she voluntarily agreed to utilize the Speedpay option instead of other available payment options without knowing that a portion of the fee would go to Caliber: (1) violation of the FDCPA, 15 U.S.C. § 1692 *et seq.*, specifically 15 U.S.C. § 1692f(1), and (2) violation of the FDUTPA, 501.201 Fla. Stat.   Both claims are subject to dismissal with prejudice.

## I.    Plaintiff's FDCPA Claim Fails: A Fee For An Optional, Voluntary Payment Method Is Not Subject to § 1692f(1) Because There Is No "Collection."

Although she could have used any of several free payment methods, Plaintiff alleges that the fee she paid for use of the optional, voluntary Speedpay option to make her mortgage payment violates § 1692f(1) of the FDCPA.  This claim fails as a matter of law.

Under § 1692(f), "[a] debt collector may not use unfair or unconscionable means to

collect or attempt to collect any debt," which includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  To state an FDCPA claim in the 11th Circuit, a plaintiff must adequately allege that "(1) he has been the object of ***collection activity*** arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."  *Arencibia v. Mortg. Guar. Ins. Corp.*, No. 2:15-CV-248-FTM-38CM, 2015 WL 7076691, at *2 (M.D. Fla. Nov. 13, 2015)(emphasis added) (citing *Reese v. Ellis, Painter, Ratterre & Adams, LLC*, 678 F.3d 1211, 1216 (11th Cir. 2012)); *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1244 (S.D. Fla. 2015) (dismissing § 1692f(1) claim for failure to allege "collection activity"); *cf., Diaz v. Florida Default Law Grp., P.L.*, No. 3:09-CV-524-J-32MCR, 2011 WL 2456049, at *2 (M.D. Fla. Jan. 3, 2011) (applying the three elements of an FDCPA claim to a claim under § 1692f(8)).

Accordingly, to state a viable claim for violation of § 1692f(1) of the FDCPA, a plaintiff must, as a threshold matter, establish the defendant "collect[ed]" a fee or amount not permitted by law or the underlying instrument while engaged in a "collection activity."  *Id.*; *Bohringer*, 141 F. Supp. 3d at 1244; *Elmore v. Ne. Florida Credit Bureau, Inc.*, No. 3:10-CV-573-J-37JBT, 2011 WL 4480419, at *4 (M.D. Fla. Sept. 27, 2011); *Gaisser v. Portfolio Recovery Assocs., LLC*, 571 F. Supp. 2d 1273, 1278-79 (S.D. Fla. 2008); *see also Prescott*, 635 F. App'x at 643; *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 609-10 (11th Cir. 2014); *Heald v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-993, 2014 WL 4639410, at *2-5 (M.D. Fla. Sept. 16, 2014). Although the FDCPA does not define "collect" or "collection," the 11th Circuit, for purposes of the FDCPA generally and § 1692f(1) specifically, adopted the Supreme Court's definition and

defined "to collect" as meaning "to **obtain** payment or liquidation [ ], either **by _personal_**
**_solicitation or legal proceedings_**." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1261 (11th
Cir. 2014) (emphasis added) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (quoting
Black's Law Dictionary 263 (6th ed.1990))), *cert. denied*, 135 S. Ct. 1844 (2015).   Thus,
whether a representation or action amounts to "collection" or an attempt to collect turns on
whether the debt collector demanded payment of the amount, implied that the consumer would
incur additional charges or owe a higher amount if the amount was not paid, or implicitly
demanded payment of the amount by stating the amount owed and how such amount due could
be paid. *Pinson v. Albertelli Law Partners, LLC*, 618 F.3d Fed. App'x 551, 553 (11th Cir. 2015)
(citing *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302-03 & n.2 (11th Cir. 2014); *Reese*,
678 F.3d at 1217).[3]

Put another way, to state a claim under § 1692f(1), a plaintiff must allege, not simply that
she paid a purportedly unauthorized fee or charge, but that the defendant **_demanded payment_** of
the fee in a way that qualifies as "collection." *See Crawford*, 758 F.3d at 1261; *Bohringer*, 141
F. Supp. 3d at 1244-45; *Prescott v. Seterus, Inc.*, 635 F. App'x 640, 644 (11th Cir. 2015) (finding
that debt collector violated § 1692f(1) by including estimated attorneys' fees in the total amount
it quoted to the plaintiff as the amount to reinstatement his loan).   Significant and controlling
authority in the 11th Circuit and Florida district courts, shows that § 1692f(1) is not triggered
unless the debt collector presented the fee or charge at issue as mandatory, included it in the

---

[3] In the Complaint, Plaintiff sites several cases from other jurisdictions regarding convenience
fees or processing fees.  These cases, however, are not the law in the Eleventh Circuit and are not
binding on this Court.  Further, this Court need not look to these cases because Florida district
courts and the Eleventh Circuit have, in fact, interpreted § 1692f(1) of the FDCPA and addressed
claims thereunder regarding fees and charges by a debt collector.   There is no authority
mandating or even suggesting that a voluntary convenience fee for an optional payment method
should be subject to a different analysis or treatment than the types of fees and charges that
courts in this jurisdiction have already addressed under § 1692f(1).

amount owed and for which payment was demanded, or otherwise presented the fee or charge as being required by the loan agreement or as part of the debt (i.e., whether the debt collector engaged in "collection" of the fee or charge). *Compare Bohringer*, 141 F. Supp. 3d at 1244-45 (dismissing § 1692f(1) claim because plaintiffs failed to allege how they became aware of the charges or any correspondence by which the defendant "***demanded payment***" thereof, failing to satisfy the threshold requirement of collection or attempted collection of the allegedly improper charges) (emphasis added), *Elmore v. Ne. Florida Credit Bureau, Inc.*, No. 3:10-CV-573-J-37JBT, 2011 WL 4480419, at *4 (M.D. Fla. Sept. 27, 2011) (finding no § 1692f(1) violation because the defendant ***had not*** "***added*** the [charge at issue] ***to the total amount owed***") (emphasis added), *and Gaisser v. Portfolio Recovery Assocs., LLC*, 571 F. Supp. 2d 1273, 1278-79 (S.D. Fla. 2008) (dismissing § 1692f(1) claim because the collector "***did not mischaracterize the fees as part of the debt or as required under the agreement***") (emphasis added), *with Prescott*, 635 F. App'x at 643 (finding violation of § 1692f(1) when collector "***include[ed] estimated attorney's fees in [the] reinstatement balance***" that was ***presented as due and of which payment was demanded***) (emphasis added), *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 609-10 (11th Cir. 2014) (finding violation of § 1692f(1) when defendant ***added*** an unauthorized collection fee ***to balance due*** on the plaintiff's account), *Heald v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-993-J-34JRK, 2014 WL 4639410, at *2-5 (M.D. Fla. Sept. 16, 2014) (applying § 1692f(1) when account statements from defendant showed that it added certain fees to the amount of the monthly payment due), *and Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564, 1566-68 (M.D. Fla. 1996) (finding plaintiffs stated a claim under § 1692f(1) when defendant "***add[ed]*** an unauthorized payoff fee ***to the amount owed***") (emphasis added).[4]

---

[4] *See also, Adams v. Albertelli*, No. 215CV620FTM38MRM, 2016 WL 931103, at *1-3 (M.D.

In this case, Plaintiff fails to plead any facts that would show that Caliber engaged in "collection" of the Speedpay fee, as is required to sustain a § 1692f(1) claim in the 11th Circuit and Florida District Courts.[5]   Specifically, Plaintiff does not and cannot allege that Caliber characterized the Speedpay fee as part of the debt or amount she owed on her mortgage loan; Plaintiff does not allege that Caliber stated or implied that such fee or payment method was required; and Plaintiff does not allege that Caliber added the Speedpay fee to her loan balance. (*See generally*, Compl.; Ellis Decl. ¶¶ 14-18.)   To the contrary, it is undisputed that Plaintiff could have used other payment methods that did not carry a fee and voluntarily elected to use the Speedpay system instead.  (*See* Compl. ¶ 17; Ellis Decl. ¶¶ 14-18.)

---

Fla. Mar. 11, 2016) (denying motion to dismiss when plaintiff alleged that defendant had violated § 1692f(1) by seeking a post-foreclosure deficiency judgment on non-recourse loan); *Losure v. Capital One Servs., Inc.*, No. 2:05CV502FTM29SPC, 2006 WL 166520, at *1-2 (M.D. Fla. Jan. 23, 2006) (finding consumer stated a § 1692f(1) claim because defendant attempted to collect a portion of the debt that had been discounted in a settlement); *Manrique v. Wells Fargo Bank N.A.*, 116 F. Supp. 3d 1320, 1325 (S.D. Fla. 2015) (finding plaintiff stated a claim under § 1692f(1) when the complaint alleged that the defendant "***included . . . those [unauthorized] fees as part of the total amount due***" to pay off the mortgage loan) (emphasis added); *Anselmi v. Shendell & Assocs., P.A.*, No. 12-61599-CIV, 2014 WL 5471111, at *1, *5 (S.D. Fla. Oct. 29, 2014) (granting motion for limited discovery on issue of whether fee on which § 1692f(1) was authorized when fee was added to and included in "total amount due" in letter to plaintiff); *Eisenberg v. Shendell & Assocs., P.A.*, No. 10-CV-62149-JIC, 2011 WL 1233253, at *1, *6 (S.D. Fla. Mar. 31, 2011) (denying motion to dismiss § 1692f(1) or 1692f claim when plaintiffs alleged defendant debt collector ***demanded payment of an amount that included*** unauthorized late fees, interest, and attorneys' fees).   *Cf. Malowney v. Bush/Ross*, No. 8:09-CV-1189-T-30TGW, 2009 WL 3806161, at *2, *5 (M.D. Fla. Nov. 12, 2009) (dismissing § 1692f(1) claim on other grounds where plaintiff complained of a demand letter from an HOA stating that the plaintiff clear an HOA lien "by paying the amount specified above," which amount demanded included an amount for purportedly unauthorized attorneys' fees); *Malowney v. Zacur, Graham & Costis, P.A.*, No. 8:11-CV-634-T-30EAJ, 2011 WL 1655572, at *2 (M.D. Fla. May 2, 2011) (same).

[5] Because Plaintiff failed to allege that Caliber engaged in "collection" of the Speedpay fee, the question of whether such fee is authorized by the note, mortgage, or modification agreement is immaterial.   *See Heald*, 2014 WL 4639410, at *2-5 (M.D. Fla. Sept. 16, 2014) (reaching question of whether fee was authorized under the loan documents when plaintiff alleged that the statements she received from the defendant showed that it had charged the plaintiff certain fees and added those fees to the amount of the monthly payment due).

Further, Plaintiff, like the plaintiffs in *Bohringer*, fails to allege that Caliber demanded payment of the Speedpay fee. Indeed, she does not allege that there was a single communication or representation in which Caliber presented the Speedpay fee as due and demanded payment thereof. Accordingly, the optional and voluntary Speedpay fee does not fall within § 1692f(1), and Plaintiff's claim, like the claims in *Elmore*, *Bohringer*, and *Gaisser*, must be dismissed as a matter of controlling 11th Circuit law.

## II.   Plaintiff's FDUTPA Claim Fails.

To state a claim for violation of the FDUTPA, Plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Ferrara v. LCS Fin. Servs. Corp.*, No. 8:14-cv-2450-T-30AEP, 2015 WL 84703, at *3 (M.D. Fla. Jan. 7, 2015). A plaintiff must also allege that the deceptive act or unfair practice occurred "in the conduct of any trade or commerce." Fla. Stat. § 501.204; s*ee also Merrill Lynch Bus. Fin. Servs. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861, 2005 WL 975773, at *8 (S.D. Fla. Mar. 4, 2005). Trade or commerce is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). It is well established that debt collection is not "trade or commerce" for purposes of FDUTPA. *See, e.g. State v. Shapiro & Fishman, LLP*, 59 So. 3d 353, 355-57 (Fla. 4th DCA 2011); *Mesa v. Boston Portfolio Advisors, Inc.*, 2015 U.S. Dist. LEXIS 92549, *9-10 (S.D. Fla. July 16, 2015); *Law Office of David J. Stern, P.A. v. State*, 83 So. 3d 847, 849-50 (Fla. 4th DCA 2011); *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1371-77 (S.D. Fla. 2010); *Trent v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007). This fact that debt collection is not an action that falls within the prevue of FDUTPA is

independently fatal to Plaintiff's FDUTPA claim.  Indeed, the entire thrust of the Complaint is that the Speedpay fee is debt collection.

Moreover, even if it were assumed for the purposes of argument that debt collection could be considered actionable under FDUTPA (which it cannot), Plaintiff cannot meet the requirements to maintain her claim because she cannot show either a deceptive act or damages caused by a deceptive act.  Under Florida law, the deceptive or unfair practice element of a FDUTPA claim can be met in one of two ways: (a) violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes ... unfair, deceptive, or unconscionable acts or practices," Fla. Stat. § 501.203(3)(c), or (b) a practice that is independently deceptive or unfair, defined as "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment," *Zlotnick v. Premier Sales Grp.*, 480 F.3d 1281, 1284 (11th Cir. 2007).  For the second, non-statutory, method, the pleading requirements of Rule 9(b) apply -- meaning the fraud or deceit must be plead with particularity. *Ferrara v. LCS Fin. Servs. Corp.*, No. 8:14-cv-2450-T-30AEP, 2015 WL 84703, at *3 (M.D. Fla. Jan. 7, 2015); *Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878, at 3-4 (M.D. Fla. Mar. 14, 2012).

In her effort to satisfy these elements, Plaintiff's Complaint alleges that calling the fee a Western Union Speedpay fee is unfair or deceptive because it conceals that Caliber allegedly receives a portion of the fee and conceals that Caliber is purportedly violating the FDCPA. (Compl. ¶¶ 39-46.)  This is not a viable theory.

First, as set forth above, provision of a voluntary option for Plaintiff to make an immediate payment by phone or internet for a fee in lieu of all of the other methods available does not give rise to an FDCPA violation.  Second, there is nothing deceptive about a Speedpay

fee.  Plaintiff knows the amount she owes, knows that she has the option to pay by multiple free means and knows the amount of the fee she will be required to pay if she utilizes the Speedpay option.  The fact that she does not know that, allegedly, a portion of the fee will go to Caliber is entirely immaterial.  Moreover, Plaintiff fails to show how Caliber's alleged failure to disclose that it would receive a portion of the fee damaged her because she voluntarily agreed to pay an $8 fee (knowing that she would not get any of it back) and received precisely that which she voluntarily bargained for: the ability to make a payment by credit or debit card over the phone or online.

Further, Plaintiff's Complaint fails to meet the pleading requirements of Rule 9(b).  *See Blair*, 2012 WL 868878, at 3-4.  Although Plaintiff makes a conclusory allegation that omitting the details of the alleged fee splitting is deceptive, she fails to allege how the omission "is likely to mislead" consumers to their detriment (i.e., that consumers have no problem paying ~$15 to Western Union but would choose a different payment method if they knew that Western Union did not keep the entire fee).  Nor does Plaintiff allege that she was pressured to use Speedpay or tricked into believing it was the only way for her to pay.  Accordingly, the FDUTPA claim should be dismissed.  *See Ferrara v. LCS Fin. Servs. Corp.*, No. 8:14-cv-2450-T-30AEP, 2015 WL 84703, at *3 (M.D. Fla. Jan. 7, 2015) ("However, the Complaint does not contain any allegations regarding how LCS's statements were misleading, nor does it contain allegations of causation connecting LCS's actions to any alleged damages. Accordingly, Ferrara has not sufficiently plead all elements of a FDUTPA claim.").

## III. Plaintiff's Interpretation Of The FDCPA and FDUTPA Would Violate Constitutional Rights.

The gravamen of Plaintiff's Complaint is her contention that FDCPA and the FDUTPA should be interpreted in such a way as to prohibit a loan servicer and a borrower from

subsequently agreeing to a charge or fee in exchange for a service that is not specifically identified or addressed in the initial contract.  Such an interpretation is prohibited by the United States and the Florida Constitutions and would tremendously burden the rights of both parties, hindering customers instead of providing customers with the freedom to freely bargain for a convenient payment method not contemplated by the underlying agreement.

Both the United States and the Florida Constitution protect the right of parties to enter into contracts:

> While this court has not attempted to define with exactness the liberty . . . guaranteed (by the Fourteenth Amendment), the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint **but also the right of the individual to contract**, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972)(emphasis added).

> The right to make contracts of any kind, so long as no fraud or deception is practiced and the contracts are legal in all respects, is an element of civil liberty possessed by all persons who are sui juris. It is both a liberty and property right and is within the protection of the guaranties against the taking of liberty or property without due process of law.

*Miles v. City of Edgewater Police Dept./Preferred Governmental Claims Sols*., 190 So. 3d 171, 182 (Fla. 1st DCA 2016) (quoting *State ex rel. Fulton v. Ives*, 123 Fla. 401, 167 So. 394, 398–99 (1936) (citations omitted))., reh'g denied (May 13, 2016).

It is undisputed that the Loan Documents do not require Caliber to provide a pay by phone, internet, or credit/debit card option.  It is further undisputed that Plaintiff had multiple means to make payments without any fees, but voluntarily opted to take advantage of an option available for a fee.  If the Court were to interpret §1692f(1) or the FDUTPA to prohibit a

borrower and a servicer from voluntarily agreeing to a new vehicle for payment that was satisfactory to both parties and was supported by adequate consideration (as Plaintiff now requests), these laws would take on a significantly different role in our system of commerce.

Rather than a means to protect borrowers from entities that would unilaterally impose and demand payment for fees never contemplated in the contract, Plaintiff would stretch § 1692f(1) and FDUTPA to laws restricting the freedom to contract after the initial contract creating the debt.   Absent a showing that a law is narrowly tailored to further a compelling government interest, the Constitutions of the United States and Florida simply do not permit the government to impose such restrictions on the right of individuals and entities to freely contract. *Lofton v. Sec'y of Dep't of Children & Family Servs.,* 358 F.3d 804, 815 (11th Cir. 2004)("Laws that burden the exercise of a fundamental right require strict scrutiny and are sustained only if narrowly tailored to further a compelling government interest.").   Moreover, when constructing statutes, Courts are required to interpret statutes in such a manner as to avoid conflict with the Constitution. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988)("…where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

Here, the subject matter of the agreement, to allow Plaintiff to pay through the Speedpay system, is not illegal or offensive in any way.   Moreover, there is no allegation that Caliber tricked or deceived Plaintiff into entering into the agreement to pay via Speedpay.   Accordingly, there can be no compelling government interest that would sustain Plaintiff's interpretation of the § 1692f(1) and FDUTPA, and therefore, adoption of Plaintiff's interpretation is prohibited.

**IV.    Cases cited by Plaintiff from other jurisdictions deviate from the Eleventh Circuit's interpretation of "collection" and do not hold up to scrutiny.**

In her Complaint, Plaintiff cites several district court cases from outside the 11th Circuit and insists that these cases unequivocally establish that a convenience fee associated with an entirely optional payment method, voluntarily selected and agreed to by the consumer, is *per se* impermissible under § 1692f(1) if the debt collector receives any portion of the fee.[6]  In addition to the fact that these cases are in no way controlling on this Court, Plaintiff's reliance is misplaced because the cases she cited (a) either fail to examine the element of collection or rely upon an interpretation of "to collect" or "collection," that is vastly different from the established interpretation in this District and the 11th Circuit; and (b) are built on misinterpretations and unwarranted expansions of early cases on optional fees under § 1692f(1).

As set forth above, the 11th Circuit and district courts in Florida have an established framework for analyzing FDCPA claims and § 1692f(1) claims that requires, as a threshold matter, that the defendant be engaged in "collection" or "attempted collection" of the fee or charge at issue by including the fee in the total amount of the debt or demanding payment of the fee as due and owed as part of the debt.  *See, e.g.*, *Elmore*, 2011 WL 4480419, at *4; *Gaisser*, 571 F. Supp. 2d at 1278-79; *Crawford*, 758 F.3d at 1261; *Bohringer*, 141 F. Supp. 3d at 1244-45; *Prescott*, 635 F. App'x at 644.  None of the cases cited in the Complaint  involve fees or charges that would be actionable under § 1692f(1) as applied by the 11th Circuit or Florida district courts because none of them satisfy the threshold requirement of "collection"—none of them involve a

---

[6] *See* Compl. ¶¶ 13-14, 17 (citing *Johnson-Morris v. Santander Consumer USA, Inc.*, 2016 WL 3571468 (N.D. Ill. July 11, 2016); *Lindblom v. Santander Consumer USA, Inc.*, 2016 WL 2841495 (E.D. Cal. May 9, 2016); *Wittman v. CB1, Inc.*, 2016 WL 1411348 (D. Mont. Apr. 8, 2016); *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1019 (E.D. Mo. 2015); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568 (E.D.N.Y. 2015); *Acosta v. Credit Bureau of Napa County*, 2015 WL 1943244 at *3 (N.D. Ill. Apr. 29, 2015); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434 (E.D.N.Y. 2014); *Shami v. Nat'l Enter. Sys.*, 2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010).

fee or charge demanded as due or added to the amount of the debt.[7]  To the contrary, most of the cases cited by Plaintiff bypass any detailed consideration of the elements of an FDCPA claim, including the requisite "collection" of the fee or charge under § 1692f(1).  Those that do look at "collection" have adopted a passive interpretation that is directly at odds with this District's and the 11th Circuit's interpretation of "collection," with one case going so far as to define "to collect" as simply "to receive payment."  *Acosta*, 2015 WL 1943244 at \*3.  Accordingly, these cases provide little, if any, guidance and certainly cannot override the 11th Circuit's precedent.

In addition,  the cases Plaintiff cites are built—directly or indirectly—on mistaken interpretations, mischaracterizations, and improvident expansions of three earlier cases involving a fee for an optional (or purportedly optional), voluntary payment method: *Lee*, *Lewis*, and *Longo*.[8]   Each case cited in the Complaint simply builds on and expands the initial mischaracterization of these prior cases.

Without diving too deeply into tracing this line of cases,[9] the flaws in their analyses can be traced in large part to *Shami v. National Enterprise Systems*, 2010 WL 3824151, at \*3-4

---

[7] *See*, *Johnson-Morris v. Santander Consumer USA, Inc.*, 2016 WL 3571468 (N.D. Ill. July 11, 2016); *Lindblom v. Santander Consumer USA, Inc.*, 2016 WL 2841495 (E.D. Cal. May 9, 2016); *Wittman v. CB1, Inc.*, 2016 WL 1411348 (D. Mont. Apr. 8, 2016); *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1019 (E.D. Mo. 2015); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568 (E.D.N.Y. 2015); *Acosta v. Credit Bureau of Napa County*, 2015 WL 1943244 at \*3 (N.D. Ill. Apr. 29, 2015); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434 (E.D.N.Y. 2014); *Shami v. Nat'l Enter. Sys.*, 2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010).

[8] *Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997) (affirming dismissal of § 1692f(1) claim based on 5% processing fee charged if consumer opted to pay by credit card); *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290 (S.D. Ohio 1996) (following trial, dismissing § 1692f(1) claim based on processing fee charged if consumer opted to pay debt by credit card); *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, No. 04-cv-5759, ECF No. 29 (N.D. Ill. Feb. 3, 2005) (denying motion to dismiss § 1692f(1) claim based on collection letter specifying a processing fee for payments made by phone when letter listed no other payment options).

[9] In light of inapplicability and page limitations, Defendant is limiting its discussion of the cases from other jurisdictions cited in the Complaint.  In the event Plaintiff addresses the authority in its Response, Defendant will expand its discussion of these cases as necessary in Reply, upon leave of Court.

(E.D.N.Y. Sept. 23, 2010), the common thread among this line of cases and the lens through which courts later interpret *Lee*, *Lewis*, and *Longo*.[10]  In *Shami*, the District Court for the Eastern District of New York cited to *Lee, Lewis*  and *Longo* as precedent establishing that § 1692f(1) applies to "any amount" not addressed in the underlying contract, including a fee for an optional, voluntary payment method.  *Shami*, 2010 WL 3824151 at *3-4.  To reconcile the fact that *Lewis* and *Lee* dismissed the § 1692f(1) claims while the claim was allowed to proceed in *Longo*,[11] *Shami* concluded that the holdings must turn on whether the debt collector received any portion of the voluntary fee because the fee in *Lewis* and *Lee* was pass-through but it was not in *Longo*. *Shami*, 2010 WL 3824151 at *3-4.  *Shami*'s characterizations of *Lee*, *Lewis*, and *Longo*,

---

[10] *See e.g.*, *Johnson-Morris*, 2016 WL 3571468, at *5-6, n. 5 (applying § 1692f(1) to a voluntary convenience fee because "the majority of courts have determined [ ] that similar flat transaction fees . . . fall within the scope of the FDCPA" and focusing on whether the collector retained any of the fee (relying on *Wittman*, 2016 WL 1411348, at *2; *Weast*, 115 F. Supp. 3d at 1021; *Quinteros*, 999 F. Supp. 2d at 438-39; *Shami v. National Enterprise Systems*, 2010 WL 3824151, at *3-4 (E.D.N.Y. Sept. 23, 2010); *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, No. 04-cv-5759, ECF No. 29 (N.D. Ill. Feb. 3, 2005)); *Lindblom*, 2016 WL 2841495, at *4-6 (similar) (relying upon *Wittman*, 2016 WL 1411348, at *4; *Weast*, 115 F. Supp. 3d at 1019; *Campbell*, 98 F. Supp. 3d at 580-83; *Quinteros*; *Shami*; *Tuttle v. Equifax Check*, 190 F.3d 9 (1999); *Longo*; *Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997); *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290 (S.D. Ohio 1996)); *Wittman*, 2016 WL 1411348, at *2-4 (same) (relying upon *Weast*, *Quinterros*, *Shami*, *Longo*, *Lee*, and *Lewis*); *Weast*, 115 F. Supp. 3d at 1019 (same) (relying upon *Campbell*, *Quinterros*, *Shami*, *Tuttle*, and *Lee*); *Acosta*, 2015 WL 1943244 at *3 (relying upon *Campbell*, *Quinterros*, *Shami*, *Longo*, *Lee*, and *Lewis*); *Campbell*, 98 F. Supp. 3d at 580-83 (same) (relying on *Quinterros*, *Shami*, *Longo*, *Tuttle*, *Lee*, and *Lewis*); *Quinterros*, 999 F. Supp. 2d at 438-39 (same) (relying on *Tuttle* and *Shami*); *Shami v. National Enterprise Systems*, 2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010) (citing and interpreting *Longo*, *Tuttle*, *Lee*, and *Lewis*).

[11] *Lewis*, 911 F. Supp. at 292-93; *Lee*, 125 F.3d at 855; *Longo*, No. 04-cv-5759, ECF No. 29, 7-8.

however, are mistaken and misplaced and overstate the courts' conclusions,[12] yet *Shami* and its characterizations of these early cases are the foundations of the line of cases cited in the Complaint.[13]

Further, many of the cases Plaintiff cites go out of their way to reject two reasoned opinions holding that § 1692f(1) did not apply to a fee for an optional and voluntarily selected payment method, *Mann v. Nat'l Asset Mgmt Enters., Inc.*, No. 04-cv-1304 (C.D. Ill. Feb. 24, 2005) and *Flores v. Collection Consultants*, No. 14-cv-771, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015), when the fee would only be charged if the customer elected the entirely optional payment method (consistent with this Court's and 11th Circuit precedent on "collection" and § 1692f(1)).[14]   Although *Flores* and *Mann* are properly premised on the lack of a demand for payment of the fee and the voluntary nature of the payment method to which the fee applied (i.e., the element of "collection"), several cases cited by Plaintiff incorrectly insist that the outcomes

---

[12] *See Lee*, 125 F.3d at 855 (affirming dismissal of § 1692f(1) claim because the language in in the letter at issue that stated a fee for an optional, voluntary payment method among several non-fee methods was not "an 'attempt' to collect an extra fee"); *Lee v. Main Accounts, Inc.*, No. 3:95-cv-92, slip op. at 12-14 (S.D. Ohio Aug. 21, 1996) (dismissing § 1692f(1) claim because debt collector did not attempt to collect an unauthorized fee when the fee would only be charged if the customer opted to pay by credit card, the amount was not added to the total amount due, and the customer could pay by other methods) (this slip opinion is attached hereto as Exhibit 2); *Lewis*, 911 F. Supp. at 292-93 (summary opinion including no explanation of analysis supporting dismissal of the § 1692f(1) claim); *Longo*, No. 04-cv-5759, slip op. 5-8 (denying motion to dismiss § 1692f(1) claim based on collection letter specifying a processing fee for payments made by phone when fee-based payment method was implicitly mandatory).

[13] *See supra* n. 10.

[14] *See Mann*, No. 04-cv-1304 (dismissing § 1692f(1) claim because there was no "collection" when the fee was associated with a voluntary payment method and the collector never told Mann "she owed the [fee] or demanded that she pay it") (slip opinion attached hereto as Exhibit 3); *Flores* 2015 WL 4254032 (dismissing § 1692f(1) claim because 9th Circuit case law indicated that § 1692f(1) applied to fees or charges imposed as part of the amount demanded as owed and the fee at issue was not demanded as owed but was optional if voluntarily chosen).

are explained by the collector receiving none of the fee in order to reach a foregone conclusion.[15]

In short, the cases Plaintiff cites in her Complaint do not hold up to scrutiny and do not comport with the existing analytical framework for § 1692f(1) claims in this circuit. Florida district courts and the 11th Circuit require "collection" of the purportedly unauthorized fee (i.e., demanding payment of the fee as due and owed) for a § 1692f(1) claim, and there is ample case law within this circuit on this point.

## V.     The Speedpay Fee is authorized by the EFTA And Other Laws.

Caliber's Speedpay payment options do not violate § 1692f(1) because they are expressly permitted under federal law, including the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), Regulation E, 12 C.F.R. §§ 1005.1, *et seq.*, which expressly permits consumers to make payments by phone or internet via electronic funds transfer, and the Constitutionally guaranteed freedom to contract discussed above. This is an independent basis that defeats Plaintiff's claims.

Courts have read 15 U.S.C. § 1692f(1)'s prohibition on the collection of unauthorized fees as allowing debt collectors to collect the amounts in question so long as there is some statute that "'permits,' *i.e.* authorizes or allows, in however general a fashion, the fees or charges in question." *Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1368 (E.D. Cal. 1995); *accord Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("[A] general statutory authorization satisfies the FDCPA; that is, rather than pointing to a state statute that expressly permits a particular imposition of fee, one need only identify some state statute which 'authorizes or

---

[15] *See e.g.*, *Acosta*, 2015 WL 1943244 at *2 (adopting *Shami*'s disagreement with and interpretation of *Mann* concluding that it was distinguishable because of the pass-through nature of the fee); *Wittman*, 2016 WL 1411348, at *4, n 4 (mischaracterizing *Mann* and *Lee* as finding § 1692f(1) inapplicable because a pass-through fee is not an attempt to collect); *Johnson-Morris*, 2016 WL 3571468, at *5 (distinguishing *Flores* as based on no benefit to the collector from the fee and mischaracterizing the court's reasoning).

allows, in however general a fashion, the fees or charges in question'") (quoting *Newman*, 912 F. Supp. at 1368; other internal quotation marks omitted); Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50.097, 50.108 (Fed. Trade Comm'n 1988) (same).  Such an interpretation is consistent with the dictionary definition of "permit," which is "to consent to expressly or formally; grant leave for or the privilege of…"  Webster's Third New International Dictionary 1683 (1976).

The EFTA defines "electronic fund transfers" as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."  15 U.S.C. § 1693a(7).  Similarly, Regulation E defines an electronic fund transfer as "a transfer of funds initiated through an electronic terminal, telephone, computer (including online banking) or magnetic tape for the purposes of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account."  12 C.F.R. § 1005.3(a).[16]  A transaction through the Speedpay system falls squarely within the definition of an "electronic fund transfer," as it is a "transfer of funds" that does not originate by a paper instrument and is "initiated through an electronic terminal, telephone, [or] computer." *Id*.  Similarly, an agreement between a customer and a loan servicer to establish an additional means by which to make a payment in exchange for a fee constitutes a contract.

The EFTA expressly anticipates that financial institutions will charge fees for performing

---

[16] Caliber qualifies as a "financial institution" under Regulation E because it is an institution "that issues an access device and agrees with a consumer to provide electronic fund transfer services." 12 C.F.R. § 1005.2(i); see 12 C.F.R. Part 205, Supplement I to Part 205 – Official Staff Interpretation to Section 205.2 (explaining that "telephone transfer and telephone bill payment codes" used to initiate electronic fund transfers qualify as "access devices" for the purposes of Regulation E).

electronic fund transfers. Section 1693c(a), which governs terms and conditions of electronic fund transfers, requires certain disclosures to a consumer "at the time the consumer contracts for an electronic fund transfer service," including "any charges for electronic fund transfers or for the right to make such transfers."  Similarly, 12 C.F.R. § 1005.7(b)(5) expressly contemplates that a financial institution may charge fees "for electronic fund transfers or for the right to make transfers" by mandating that the financial institution inform its customer of the existence of the fee "at the time a consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account." 12 C.F.R. § 1005.7(a). Finally, the Constitutions of the United States and Florida require that Plaintiff and Defendant have the freedom to contract, including the freedom to enter into an arms-length agreement to modify their existing contract to provide for a new payment option in exchange for a disclosed fee.

The EFTA's express anticipation that entities will lawfully charge fees for the use of electronic fund transfers satisfies the literal definition of the word "permit[s]" in Section 1692f(1). In fact, the EFTA's text apparently fits the exact scenario envisioned by the courts in *Newman* and *Riddle*: "a general statutory authorization"—*i.e.*, a "statute which authorizes or allows, in however general fashion, the fees or charges in question," even without "expressly permit[ing] a particular imposition of fee." *Riddle*, 305 F.3d at 1118.  By expressly conditioning the charging of such a fee only upon the provision of sufficient disclosures—an issue not presented in the Complaint—the EFTA is a "general statutory authorization" for financial institutions to charge disclosed fees associated with making electronic fund transfers.

Policy further supports a conclusion that the EFTA permits a fee to be charged for an electronic fund transfer. Scores of other loan servicers and similarly situated financial institutions

rely upon the EFTA's imprimatur for fee charges and the detailed guidance provided in the parallel industry-promulgated rules to assess fees on consumers making electronic fund transfers. A ruling that these fees are *per se* impermissible would instantly place any institutions that had received servicing rights to a debt already in default in danger of statutory liability *as a direct result of their reliance on federal law and industry standards*. Such a framework is inconsistent with both the text and the purpose of the FDCPA.

## VI.    Caliber is Not a Debt Collector as to Plaintiff.

Plaintiff's FDCPA claim is also subject to dismissal because the Complaint fails to establish that Caliber is a debt collector as to Plaintiff.  The FDCPA applies only to "debt collectors," which it defines as "any person who . . .  regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6) (2016).   Importantly, the statute excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).  The definition must be applied on a debt-by-debt basis because the term is "properly understood" to encompass "any person 'who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another' and *is* collecting for another." *Davidson v. Capital One Bank (USA), N.A.* 797 F.3d 1309, 1314 (2015) (emphasis added). Thus, the complaint must sufficiently allege that Caliber is a debt collector as to Plaintiff.  *Id.*

A loan servicer such as Caliber loses its status as a "debt collector" with respect to a loan that was initially in default if it subsequently enters into a loan modification with the borrower that brings the borrower current on the loan.  *See, e.g., Schlegel v. Wells Fargo Bank, N.A.*, 799 F. Supp. 2d 1100, 1105 (N.D. Cal. 2013), *aff'd in relevant part*, 720 F.3d 1204 (9th Cir. 2013); *Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384, 387-88 (7th Cir. 1998).  Here, the loan

agreements central to Plaintiff's claims show that Caliber and Plaintiff entered into a Modification agreement effective March 2016, bringing her loan current.  At that point, having implemented the terms of the Modification, Caliber was no longer a "debt collector" as to Plaintiff's loan.  Thus, when Plaintiff used Speedpay to make a payment on her modified mortgage loan, Caliber was not a debt collector for purposes of the FDCPA, and her claim is subject to dismissal.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims are subject to dismissal with prejudice. Accordingly, Defendant moves this Court for an order dismissing the Complaint with prejudice.

Respectfully submitted November 16, 2016.

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**

By: /s/ *James M. Talley*
James M. Talley
Florida Bar No.: 331961
SunTrust Center
200 South Orange Ave., Ste. 2900
P.O. Box 1549 (32802)
Orlando, FL 32801
Tel:  (407) 422-6600
Fax:  (407) 841-0325
jtalley@bakerdonelson.com
vmcfarland@bakerdonelson.com
fedcts@bakerdonelson.com

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**

By: /s/*Robert G. Brazier*
Robert G. Brazier (GA Bar No. 078938)
*admitted  pro hac vice*
Steven Hall (GA Bar No. 319308)
*admitted  pro hac vice*
Monarch Plaza
3414 Peachtree Road, N.E., Ste. 1600
Atlanta, GA  30326
Tel: (404) 577-6000
Fax: (404) 221-6501
rbrazier@bakerdonelson.com
shall@bakerdonelson.com
dpayne@bakerdonelson.com

**Counsel for Defendant**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2016, I electronically filed the foregoing with the Clerk of the Courts by using the CM/ECF system, which will send a notice of electronic filing to the following:

D. Frank Davis, Esq.                    Richard Shuster, Esq.
John E. Norris, Esq.                    Shuster & Saben
Kristan B. Rivers, Esq.                 1413 South Patrick Dr., Ste. 7
Davis & Norris LLP                      Satellite Beach, FL  32937
2154 Highland Ave., South               richshuster@gmail.com
Birmingham, AL  35205
fdavis@davisnorris.com
jnor5ris@davisnorris.com
krivers@davisnorris.com


                                        /s/  James M. Talley
                                            James M. Talley